09sp80001aaa-ord(remand&sanctions).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: ORAL SODIUM PHOSPHATE** | : | **Case No. 1:09-SP-80000** |
| **SOLUTION-BASED ("OSPS") PRODUCTS** | : | **(MDL Docket No. 2066)** |
| **LIABILITY ACTION** | : | |
| -------------------------------------------------------- | : | |
| | : | |
| *This Document Relates to* | : | **JUDGE ALDRICH** |
| | : | |
| **SHAFFER v. C.B. FLEET CO., INC.** | : | |
| case no. 09-SP-80001 | : | |
| | : | **MEMORANDUM AND ORDER** |

For the reasons stated below, the Court now rules as follows on these pending motions:

• Defendant Fleet's motion for reconsideration (docket no. 53) is **GRANTED**, and plaintiff Shaffer's motion for fees and costs (docket no. 22) is **DENIED, nunc pro tunc**.

• Shaffer's motion requesting a suggestion of remand (docket no. 50) is **DENIED**.

• Shaffer's motion for sanctions (docket no. 56) is **DENIED**.

### I.      Fleet's Motion for Reconsideration.

Unfortunately, Fleet was forced to file this motion due to a clerical error – the Court never meant to grant the motion regarding which Fleet seeks reconsideration. The procedural history leading up to Fleet's motion for reconsideration is equally unfortunate. A simplified version of the relevant facts is as follows.

Before there existed an *OSPS* multi-district litigation, Shaffer noticed the deposition of defendant Fleet's CEO, Jeffery Rowan, to take place on Monday, January 19, 2009. On Thursday,

January 15, 2009, only four days before the scheduled deposition, Fleet filed a motion for a protective order, seeking to avoid the deposition. On Friday, January 16, 2009, the Court entered a marginal order denying the motion for protective order.

Fleet immediately contacted the Court seeking clarification as to whether this denial meant not only that Rowan's deposition must go forward, but also that it must go forward on the date of January 19, 2009, which was extremely inconvenient for Rowan (and which was a federal holiday, so that the Court was closed). The Court's law clerk stated to Fleet that the parties should confer and agree to a mutually convenient date and time, as required by Local Rule 30.1(b)(1).[1] Fleet conveyed this information to Shaffer's counsel, who insisted he could not rely on an alleged ex parte conversation as the basis for modification to a Court's written order.[2] Accordingly, Shaffer's counsel insisted the deposition would go forward as scheduled.

Over the weekend, Fleet's counsel repeatedly made clear to Shaffer's counsel that, given the directives issued by the Court's law clerk, Rowan would not appear for deposition on Monday, January 19, 2009. Fleet also suggested to Shaffer's counsel he should not incur the costs of traveling to Cleveland and engaging a court reporter just to make a record that Rowan was not in attendance. Fleet further admonished it would oppose any subsequent attempt by Shaffer to recover fees and

---

[1] "Counsel are expected to make a timely and good faith effort to confer and agree to schedules for the taking of depositions. * * * Except where good cause exists, no Notice of Deposition or Subpoena can issue prior to a scheduling conference with opposing counsel." Local Rule 30.1(b)(1). It is questionable whether Shaffer's original notice of deposition of Rowan met this requirement.

[2] At least part of the reason that Fleet's conversation with the Court was ex parte was that the parties were unable to contact the Court jointly before the close of business on Friday, January 16, 2009, which preceded a three-day weekend. While Shaffer's counsel is generally correct that a Court speaks only through its docket, it is equally true that discovery disputes are often settled informally without written order.

costs associated with a purportedly "missed" deposition.

Shaffer's counsel ignored Fleet's warnings and flew to Cleveland for a deposition that did not take place. While Shaffer's counsel was waiting in vain for Rowan to appear, Fleet filed a motion (docket no. 18) formally asking the Court to confirm its earlier oral directive and stay Rowan's deposition, pending agreement on a mutually acceptable time and place. The Court granted this motion four days later, on January 23, 2009, the same day that Shaffer's counsel filed a motion for reimbursement of deposition fees and costs (docket no. 22).

All of the circumstances above occurred before the *OSPS* MDL was assigned to this Court, and before the *Shaffer* case was made a part of the MDL. The Court's review of these circumstances leaves it convinced that the Court's actions and rulings (as well as those of its law clerk) during that time were all proper. After the *OSPS* MDL was assigned to this Court, however, the Court made a mistake. In mid-October of 2009, the Court meant to enter a marginal *denial* of the motion for reimbursement. The reason for the intended denial was the Court's conclusion that Shaffer's counsel's insistence that Rowan's deposition take place on January 19, 2009, was obstinate, unwarranted, and unreasonable, in light of: (1) the low likelihood that counsel for Fleet would misrepresent a communication it had received from the Court's law clerk; (2) the ongoing obligation counsel have to each other and to witnesses to find, if at all possible, mutually convenient times for the scheduling of depositions; (3) Fleet's offer to make Rowan available as early as January 23, 2009, only four days after the originally-noticed date; and (4) the then-existing discovery cut-off date being over seven months away – August 1, 2009.

Unfortunately, a mis-communication occurred in October of 2009 and the Court entered a marginal *grant* of the motion for costs and fees. This was a mistake. Accordingly, Fleet's motion

for reconsideration is **granted** and the original motion for fees and costs is **denied, nunc pro tunc**.

Having reached conclusions that Shaffer's counsel was unreasonably insistent and also that this Court made a mistake, it must be noted that Fleet, too, bears some blame. It suffices to say that Fleet's discovery responses in other cases have given Shaffer's counsel some reason for mistrust, and communications between counsel in both directions have not always been civil. Thus, Shaffer's counsel was, to some extent, simply reactive when insisting the Rowan deposition go forward on January 19, 2009. In any event, the Court regrets its own error and cautions counsel that, going forward, they must engage in the required meet-and-confer process in as conciliatory a manner as is reasonably possible.

**II.     Shaffer's Motion for Remand.**

Plaintiff Shaffer originally filed her case in the Northern District of Ohio, and the case was assigned to the undersigned. The Judicial Panel on Multidistrict Litigation subsequently granted a motion to create the *OSPS* MDL and transferred all related federal cases to this Court. Specifically, the Panel ordered that, "pursuant to 28 U.S.C. §1407, the [37] actions listed on Schedule A and pending outside the Northern District of Ohio are transferred to the Northern District of Ohio and, with the consent of that court, assigned to the Honorable Ann Aldrich for coordinated or consolidated pretrial proceedings with the [*Shaffer* case, which is] listed on Schedule A and pending in that district."[3] Put more simply, all pending federal *OSPS* cases were transferred to this Court,

---

[3] *In re: Oral Sodium Phosphate Solution-Based Prods. Liab. Litig.*, 629 F.Supp.2d 1352, 1354 (J.P.M.L. 2009).

4

to join the *Shaffer* case – which was already here – for consolidated pretrial proceedings.[4]

The venue statute relied upon by the MDL Panel to transfer all of the other *OSPS* cases to this Court provides that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."[5] In what may only be called puzzling, plaintiff Shaffer cites this provision and moves the Court to remand her case. But the motion is procedurally nonsensical.

First of all, the *Shaffer* case was never transferred – the MDL Panel ordered that all of the *other* OSPS cases be transferred to this Court for consolidation with *Shaffer*. *Shaffer* already was, and always has been, pending before this Court. Thus, there was never any venue transfer of *Shaffer* that may now be "undone" via remand.[6]

Second, even if there *had* been some sort of transfer of *Shaffer* – say, from this-Court-as-trial-court to this-Court-as-MDL Court – the grant of a motion to remand back to this-Court-as-trial-court would have the effect of leaving *Shaffer* pending before exactly the same judge, in exactly the same courtroom, with exactly the same applicable law. *Shaffer* has not even been the subject of intra-district reassignment from one judge sitting in the Northern District of Ohio to another.[7] Given that the putative transferor court and the MDL transferee court involve the *same judge,* Shaffer's motion is procedural folderol and must be **denied**.

---

[4] Since that time, an additional 50 or so *OSPS* cases have been transferred into the MDL.

[5] 28 U.S.C. §1407(a).

[6] Section 1407 is "simply a venue statute." *Solis v. Lincoln Elec. Co.*, 2006 WL 266530 at *3-4 (N.D. Ohio Feb. 1, 2006) (internal quotation marks omitted). Obviously, it makes little sense to request a "change" of venue from a court to itself.

[7] *See Manual for Complex Litigation, Fourth* §22.32 at 362 (F.J.C. 2004) (discussing intra-district transfer of cases).

To be fair, it appears that what Shaffer actually seeks is not "remand" of her case, but relief from the *effect* of being included in the MDL. Specifically, this MDL Court's first order included, among others, the following directives: (1) "All outstanding discovery proceedings in all MDL cases are stayed, and no further discovery shall be initiated pending entry of the Court's CMO [Case Management Order];" and (2) "All time limits for responsive pleadings are suspended, and all discovery and motion practice is stayed, until after entry of the CMO."[8] These provisions had the effect of preventing Shaffer from continuing to prosecute her case.

Shaffer asserts her case should be put back on track for the scheduled trial date of February 1, 2010, and the parties should be allowed to pursue any remaining fact discovery, expert discovery, motion practice, and so on, to make the case trial-ready. Shaffer argues there is no non-case-specific discovery remaining on her claims, so that MDL-wide practice and procedure will not help or affect her case; to the contrary, she has "very real concerns that [her] case will suffer if it simply languishes in the MDL."[9]

The Court has some sympathy for this argument and understands Shaffer's concerns. At the very least, the Court intends to include *Shaffer* amongst the first cases designated for trial.[10] But the Court will not, at this juncture, reinvigorate the deadlines it previously set in *Shaffer*. The parties are currently working hard on reaching a global settlement. This MDL Court must now balance (a) plaintiff Shaffer's justifiable self-interest in obtaining quickly her day in court and securing compensation for herself, with (b) the interests of *all other OSPS plaintiffs* in pursuing their claims

---

[8] Pretrial Order No. 1 at 5, 8 (docket no. 12).

[9] Motion at 6 (docket no. 50).

[10] *See* master docket no. 46 (proposed *Case Management Order* §XVII at 20 (referring to the process of choosing initial MDL cases for trial)).

6

and obtaining compensation.

Certainly, these interests, to some extent, run parallel. But the undeniable fact of limited settlement resources means that no *OSPS* plaintiff can obtain everything she wants without affecting other *OSPS* plaintiffs. Thus, this MDL court must assess the propriety of setting Shaffer's case for trial within a broader context. The Court will ensure *Shaffer* goes to trial, with all necessary discovery, only if and when the trial can do the most good not only for advancing Shaffer's own interest in reaching a resolution, but also for advancing resolution of the entire MDL.

**III.    Plaintiffs' Motion for Sanctions.**

As noted, Shaffer argued, in her motion to remand, that her original discovery and trial deadlines should be maintained. One of Shaffer's bases for this argument was that "her health continues to deteriorate as a direct result of her use of Phospho-Soda," so it would be unfair to postpone her trial.[11] In response, Fleet asserted that, to the contrary, Shaffer's doctors have consistently reported her health – and, specifically, her kidney function – has improved. To support this assertion, Fleet submitted as an exhibit Shaffer's medical records (which do, in fact, bolster Fleet's position).

When obtained from the Cleveland Clinic, Shaffer's medical records came with a cover sheet identifying the records as "CONFIDENTIAL." When Fleet filed Shaffer's medical records on the docket on October 22, 2009, it did not include this cover sheet. Six days later, on October 28, 2009, Shaffer filed a reply brief in further support of her motion for remand, asserting Fleet had engaged in "public defilement of Mrs. Shaffer's confidential medical information," and warning she

---

[11] Motion at 9 (docket no. 50).

would soon file a motion seeking relief. The following day, Shaffer moved for sanctions, asserting that, by failing to place her medical records under seal in the first place, Fleet had: (1) violated the stipulated protective order; (2) ignored Local Rule 8.1 regarding redaction of personal information;[12] and (3) taken action that was "willful, mean-spirited, malicious, and done for no other purpose than to embarrass, harass, humiliate, annoy, and burden plaintiffs."[13] Shaffer asks the court to sanction Fleet by entering default judgment, holding Fleet's counsel in contempt, levying a $50,000 fine, and/or imposing other penalties.

The day after Shaffer filed her motion, without waiting for a Court order, Fleet placed Shaffer's medical records under seal. Fleet then filed a brief in response, explaining that, in other *OSPS* cases, including cases with similar stipulated protective orders, both it *and counsel for other plaintiffs* had filed medical records on the public docket; accordingly, Fleet had no idea plaintiff Shaffer would object. Fleet also notes that, upon receiving notice that Shaffer was upset about the public filing of her medical records, Fleet removed the records from the public docket and re-filed them under seal. Finally, Fleet observes that Shaffer's supposed anger seems tactical and contrived – rather than immediately contacting defense counsel and asking that her records be placed under seal, Shaffer waited a full week to file a motion for sanctions, which seeks disproportionate retribution and strategic advantage.

Having reviewed the relevant history and the parties' arguments, the Court agrees with

---

[12] Local Rule 8.1 states that parties must redact from any filed document the following four "personal identifiers": (1) social security numbers; (2) names of minor children; (3) dates of birth; and (4) financial account numbers. It appears that the medical records at issue do show Shaffer's date of birth, but none of the other "personal identifiers."

[13] Motion at 2 (docket no. 56).

8

Shaffer that Fleet should be more sensitive to plaintiffs' privacy concerns, must be more careful to ensure redaction of personal identifiers, and should assume, going forward, that all *OSPS* plaintiffs' medical records must be filed under seal.  The Court further concludes, however, that Fleet did not engage in sanctionable conduct.  Fleet's mistake appears honest, not willful or malicious.  Accordingly, the motion for sanctions is **denied**.

**IV.     Conclusion.**

If there is a common theme to the motions addressed in this memorandum, it is that Shaffer believes she is not being treated fairly by Fleet's counsel or by the MDL process.  The Court offers this consolation: the overriding concern of this Court is to ensure that, from this point on, Shaffer *is*, in fact treated fairly – neither better nor worse than Fleet, and neither better nor worse than any other *OSPS* plaintiff.  It is only by achieving this balance that Shaffer and every other party to this MDL will achieve just results.

**IT IS SO ORDERED.**

 /s/ *Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated:** November 25, 2009